UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:14-cr-478-T-23TGW
    8:16-cv-2184-T-23TGW

TIFFANI PYE WILLIAMS
_____/

**O R D E R**

    Williams's motion under 28 U.S.C. § 2255 (Doc. 1) challenges the sentences for her convictions for theft of government property and aggravated identity theft, for which offenses she is currently imprisoned for eighty-one months. Although timely, Williams's motion lacks merit. Rule 4, Rules Governing Section 2255 Cases, requires both a preliminary review of the motion and a summary dismissal "[i]f it plainly appears from the face of the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief . . . ." *Accord Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980)[1] (finding the summary dismissal of a Section 2255 motion was proper "[b]ecause in this case the record, uncontradicted by [defendant], shows that he is not entitled to relief"); *Hart v. United States*, 565 F.2d 360, 361 (5th Cir. 1978) ("Rule 4(b) [Rules Governing § 2255 Proceedings], allows

---

[1] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

the district court to summarily dismiss the motion and notify the movant if 'it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief . . . .'"). *See United States v. Deal*, 678 F.2d 1062, 1065 (11th Cir. 1982) (citing *Wright* and *Hart*). Williams's motion under Section 2255 lacks merit.

## **FACTS**[2]

> From an unknown date up to and including at least April 2013, the defendant Tiffany Pye Williams, a.k.a. Tiffani Reeves, a.k.a. Tiffany Williams, a.k.a. Tiffany Reeves, participated in a scheme to defraud the Internal Revenue Service ("IRS"). As part of the scheme, Williams, together with others, possessed, transferred and used the means of identification of third parties without their knowledge to file fraudulent federal income tax returns. The means of identification included names, dates of birth, and social security numbers of the victims, among other things. Williams, together with others, electronically filed and caused to be electronically filed fraudulent federal income tax returns using the means of identification of identity theft victims, without those victims' knowledge or consent. Those tax returns directed that the resulting fraudulently obtained tax refunds be wired from the IRS to various reloadable debit cards obtained by Williams and her co-conspirators. Williams and others then used these debit cards loaded with the fraudulently obtained refunds at various retail stores and ATMs in order to extract the funds.
>
> For example, "Green Dot" issued debit card ending in -2831 to Tiffany Williams on December 23, 2009. Although this card was issued to Tiffany Williams with a "y" at the end of her first name, it was registered to an individual with the same social security number and date of birth as the defendant. Documents provided by "Green Dot" show that fraudulent federal income tax refunds were obtained using the identities of the individuals listed below, among others, and loaded onto the card ending in -2831. A review of these tax returns showed that (a) most of the filers were deceased at the time of filing and (b) the returns

---

[2] This summary of the facts is from the plea agreement. (Doc. 27 at 18–20)

shared common characteristics, such as the same or similar refund amounts, sources and types of income, and deductions as other refunds associated with Williams:

- A.R. (died June 19, 2009) loaded onto the card on 9/22/10 in the amount of $2130.10.
- E.R. loaded onto the card on 10/15/10 in the amount of $6654.
- D.H. (died January 19, 2009) loaded onto the card on 09/13/10 in the amount of $4024.

There was approximately $14,504.10 loaded onto this card from fraudulently obtained federal and state tax refunds. This debit card was delivered to 4729 Leila Ave, Tampa, Florida, 33616. Investigators determined that Williams lived at and/or used this address from approximately May 2007, to February 2011, and had this address listed on her driver's license from approximately August 2008, through May 2010.

In reviewing the transactional history for the debit card ending in -2831, investigators determined that the card was used at ATMs, an Apple store, Bebe, and ADT Services, among other places. The card ending in -2831 was used on September 5, 2010, at the American Signature Furniture store located at 161 Brandon Town Center Drive, Brandon, Florida, for the purchase of furniture items in the amount of $1,155.54 and $139.09. These purchases were done under the name of Tiffany Reeves and had a delivery address of 11323 Bridge Pine Drive, Riverview, Florida, 33569, Williams' home address.

As victims A.R. and D.H. (Count Eight) were deceased at the time these fraudulent tax returns were filed and the refunds issued in their names, they could not give permission for their identities to be used by Williams in connection with fraudulently obtaining tax refunds.

Investigators determined that Williams, together with others working with her, filed more than 1,000 fraudulent tax returns using the stolen identities of approximately 991 individuals, many of which were deceased at the time of filing. In filing these false returns, Williams and those working with her claimed refunds in the approximate amount of $5,396,520, which resulted in Williams and others receiving approximately $1,533,283 in fraudulently obtained federal income tax refunds.

## II.  GUILTY PLEA

Williams pleaded guilty and accepted the above factual basis.  *Tollett v. Henderson*, 411 U.S. 258, 267 (1973), holds that a guilty plea waives a non-jurisdictional defect:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

This waiver of rights precludes most challenges to the conviction.  "[W]hen the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary."  *United States v. Broce*, 488 U.S. 563, 569 (1989).  *See also United States v. Patti*, 337 F.3d 1217, 1320 (11th Cir. 2003) ("Generally, a voluntary, unconditional guilty plea waives all non-jurisdictional defects in the proceedings.").  This waiver of rights includes a claim based on a pre-plea event, including a claim of ineffective assistance of counsel.  *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992).

## III.  SENTENCE

Based on the above admitted facts, Williams's sentence was calculated without affording her an adjustment under Section 3B1.2 based on her role in the offense. Williams was sentenced on September 29, 2015, and she contends that several weeks later the United States Sentencing Guidelines were amended to clarify a defendant's

eligibility for a mitigating role reduction under Section 3B1.2. Williams asserts entitlement to the retroactive application of Amendment 794 based on *United States v. Quintero-Leyva*, 823 F.3d 519, 523 (9th Cir. 2016), which holds "that [Amendment 794] applies retroactively to direct appeals." Williams is seeking relief on collateral review, not on direct appeal. As a consequence, *Quintero-Leyva* is inapposite. Under Section 1B1.10(a)(2)(A), an amendment to the Sentencing Guidelines is not applied retroactively unless it is listed in Section 1B1.10(d). Because it is not listed in Section 1B1.10(d), Amendment 794 is not applied retroactively on collateral review. As a consequence, Williams's motion under Section 2255 lacks merit. Moreover, based on the admitted facts, Williams does not qualify for a mitigating role reduction under Section 3B1.2 even under Amendment 794's clarification, which is the same standard that this district court used before the amendment.

Accordingly, the motion under Section 2255 (Doc. 1) is **DENIED**. The clerk must enter a judgment against Williams and close this case.

### DENIAL OF BOTH A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Williams is not entitled to a certificate of appealability ("COA"). A prisoner moving under Section 2255 has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of

appealability, Williams must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).  Because she fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Williams is entitled to neither a certificate of appealability nor an appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Williams must obtain authorization from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on September 14, 2016.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE